NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 10-47727 |
| Joseph B. Panella | : | Chapter 7 |
| Debtor. | : | |
| The Roofing Outlet, Inc. | : | |
| Plaintiff, | : | |
| vs. | : | Adversary No. 11-1566 |
| Joseph B. Panella | : | **OPINION** |
| Defendant. | : | |

**APPEARANCES**

Attorney for Plaintiff
Scott C. Pyfer, Esquire
Lindabury, McCormick, Estabrook & Cooper, PC
53 Cardinal Drive
PO Box 2369
Westfield, New Jersey 07091

Attorney for Defendant
James V. Loewen, Esquire
Wronko and Loewen
69 Grove Street
Somerville, New Jersey 08876

The Roofing Outlet, Inc. ("Roofing Outlet") filed this adversary proceeding against the debtor, Joseph B. Panella, seeking a determination that the judgment Roofing Outlet obtained in a civil action in the state court is not dischargeable. The complaint is based on 11 U.S.C. § 523(a)(2)(A), (4) and (6). The court tried the matter on February 28, 2012, and reserved decision.

## Finding of fact

Roofing Outlet is in the business of supplying roofing products to contractors. Gregory Licciardello is its Vice-President and Operating Manager. He and Mr. Panella became acquainted during the time that Mr. Panella was employed as a sales representative of one of Roofing Outlet's vendors, Certain Teed Corp. At some point in either 2007 or 2008, Mr. Panella approached Mr. Licciardello with a proposition. He explained that a contractor with whom Mr. Panella did business, Dial Roofing, did not have a line of credit with Certain Teed; Roofing Outlet did. Mr. Panella proposed that Roofing Outlet obtain materials from Certain Teed using its line of credit and then sell them to Dial Roofing for a small profit. Dial Roofing was to pay Mr. Panella prior to delivery of the materials, and Mr. Panella was to turn the agreed upon price over to Roofing Outlet in cash immediately after receiving it. Dial Roofing ordered materials totaling approximately $42,000. The parties agree that in the first transaction Roofing Outlet obtained the materials, Dial Roofing paid Mr. Panella, and Mr. Panella paid Roofing Outlet .

It was with the second Dial Roofing transaction that things went awry. In early 2009, Mr. Panella proposed to repeat the process for a similar project with Dial Roofing. Mr. Licciardello agreed to the same terms. On March 31, 2009, Certain Teed terminated Mr. Panella's employment. Mr. Panella told Mr. Licciardello about his change in employment status

2

that day, but his change in employment status did not alter the existing, imminent deal with Dial Roofing.

The roofing materials for Dial Roofing were ready to be delivered on April 17, 2009. Mr. Licciardello testified that he tried to get in touch with Mr. Panella to confirm that Dial Roofing had paid for the materials, but had difficulty because Mr. Panella was in the hospital receiving treatment for a kidney stone. He reached Mr. Panella at some point, however, and testified that Mr. Panella said "that he (Mr. Panella) collected the money from Dino (Dino Pampas of Dial Roofing.)"[1] Given that assurance, Mr. Licciardello released the materials to Dial Roofing. Mr. Panella testified that he was not in the hospital on April 17, 2009. He testified that he went to the bank with Mr. Pampas, took payment in cash, and returned to Roofing Outlet's office.

The precise details of what happened next are hotly disputed. Mr. Panella's version of events is that after receiving the payment for the second Dial Roofing transaction, he met in person with Mr. Licciardello and proposed that he keep the roughly $42,000 in cash to help alleviate some of his financial difficulties. Mr. Panella maintains that he explained to Mr. Licciardello that he had lost his car when he got laid off and had been unable to obtain another due to his bad credit. Because he would be unable to solicit additional sales without a car, he testified that he proposed to use the cash from Dial Roofing to purchase a car. He also testified that he proposed to keep any balance of the funds as an advance on commissions, so that he could address his other financial difficulties. Mr. Panella even gave the specifics of the repayment plan based on future sales. Mr. Panella stated that Mr. Licciardello agreed to that arrangement.

Mr. Licciardello remembers it differently. He testified that Mr. Panella arrived at Roofing Outlet the following Monday and announced that he had spent the Dial Roofing money. Mr.

---

[1] Transcript at 10.

3

Licciardello maintains that he entered into an arrangement with Mr. Panella to repay the amount due from the Dial Roofing transaction through commissions on future sales only <u>after</u> Mr. Panella had spent the money. Mr. Licciardello said that he agreed to the repayment plan Mr. Panella proposed because he felt that was the only way that he could hope to get any of the money back.

The parties agree that Mr. Panella did, in fact, bring several orders to Roofing Outlet after April 17, 2009.  Where the parties disagree is regarding payment due on those orders, and performance by Roofing Outlet.  For example, Mr. Licciardello testified about an order with Mullen Roofing in which Roofing Outlet extended credit on the basis of Mr. Panella's assurances that "[h]e's a good guy. He's gonna pay us."[2]   Mullen Roofing did not pay. Mr. Panella categorically denied that he vouched for Mullen Roofing because he knew it had a reputation for defaulting on payment.  Mr. Panella testified about contracts with Conti and Park Roofing in which Roof Outlet was paid in full, but those entities refused to do further business with Roofing Outlet because of its poor performance.

At this point, and it is not clear exactly when that is[3], Mr. Licciardello gave Mr. Panella a repayment schedule that was not linked to future sales. Mr. Panella did not make any of those payments.  At some point, and again, the testimony is not clear when, Mr. Licciardello reported the money due from the second Dial Roofing and the Manville Supply arrangements to Piscataway Township as a theft of service and theft by deception. The Grand Jury declined to indict. Mr. Licciardello then filed a civil suit for breach of contract on the basis of those same

---

[2] Transcript at 14.

[3] The complaint filed in the bankruptcy court says that the civil action was filed on April 17, 2009 (Complaint, para.7), but that is clearly inaccurate, since that is the date that the parties testified the Dial Roofing materials were just being delivered. The Manville Supply arrangements had apparently not even been made yet.

transactions and got a judgment against Mr. Panella in the amount of $64,096.47. The civil suit apparently did not contain an allegation of fraud or theft.[4]

## Analysis

The Complaint contains only one count, but it alleges sequential bases for the relief requested. The first basis alleged is 11 U.S.C. §523(a)(2)(A). That section provides that a discharge does not discharge the debt of an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. As in all §523 cases, the burden of proof is on the creditor to show all of the elements of § 523(a)(2)(A) by preponderance of the evidence.[5] Generally under this section, a creditor must show: 1) that the debtor obtained money, property or services through a material misrepresentation; 2) that the Debtor at the time knew that the representation was false or made with gross recklessness as to its truth; 3) that the Debtor intended to deceive the creditor; 4) that the creditor justifiably relied on the misrepresentation; and 5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representation.[6]

Roofing Outlet did not meet the burden of proving a material misrepresentation. Even accepting Mr. Licciardello's version of the facts as 100% true, his testimony does not establish that Mr. Panella made a false representation. Mr. Licciardello testified that Mr. Panella told him

---

[4] The complaint filed in the bankruptcy court incorporates the allegations of all papers filed in the municipal court action, but the parties never provided them to the court, either as an attachment to the complaint or as evidence at the trial. The court, accordingly, is unable to rely on what they may have contained. The only suggestion that the state court action did not contain allegations of fraud or theft was implied by a question on cross examination of Mr. Licciardello and his answer. [Transcript p 24, lines 17-25, p 25, lines 1-6]
[5] Grogan v. Garner, 498 U.S. 279, 288-89 (1991)
[6] Field v. Mans, 516 U.S. 59 (1995)

5

that he, Mr. Panella, had collected the money for the second Dial Roofing contract from Dino.[7] There was no evidence presented that this was a false statement. Mr. Licciardello testified that on the following Monday Mr. Panella told him that he did not have the money that he had collected from Dial Roofing, that he had applied it to other expenses.[8] Once again, there is no evidence that this was a false statement. The Dial Roofing money simply was not obtained through a false statement, so the court does not get beyond the first element of 523(a)(2)(A). Again, even accepting Mr. Licciardello's testimony as 100% accurate, it establishes that Mr. Panella stole the money, but not that he "obtained money, property or services through a material misrepresentation." Judgment will be entered in favor of Mr. Panella on this basis.

Next, the complaint alleges that relief is warranted under 11 U.S.C. §523(a)(4). That section excepts from the discharge of an individual debtor any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The elements of fraud or defalcation while acting in a fiduciary capacity are that the debtor: (1) acted in a fiduciary capacity; and (2) engaged in fraud or defalcation while acting in such capacity.[9] The meaning of "fiduciary capacity" is generally narrower in the bankruptcy context than its traditional common law definition (involving a person who stands in a special relationship of trust, confidence, and good faith). For the purposes of §523(a)(4), a fiduciary relationship requires an express or technical trust.[10] "The scope of technical and express trust is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statue or common law."[11] Mr. Licciardello did not even attempt to establish any

---

[7] Transcript at 10
[8] Transcript at 11
[9] In re Dawley, 312 B.R. 765, 776-77 (Bankr. E.D. Pa. 2004).
[10] Id. at 777
[11] In re Kaczynski, 188 B.R. 770, 774 (Bankr. D.N.J. 1995)

formal fiduciary relationship. Judgment will be entered in favor of the Defendant on the claim of fraud or defalcation while acting in a fiduciary capacity.

In order to prove a claim for embezzlement under § 523(a)(4), the plaintiff is not required to show a fiduciary relationship with the debtor.[12] Instead, a plaintiff must show that: (1) the debtor was entrusted with property or lawfully came into possession of property of another; (2) the debtor was under a prior restraint, whether written or verbal, as to the use of the property; and (3) the terms of restraint were violated by the debtor's use of the property.[13] Courts have found that "[i]mplicit in a claim of 'embezzlement' under §523(a)(4) is a degree of fraudulent intent."[14] Therefore, in order to sustain an action for "embezzlement" or "larceny" under 11 U.S.C. § 523(a)(4), the plaintiff must establish not only that the debtor exercised unauthorized control over the property of another, but also that the debtor had fraudulent intent in doing so.[15]

Once again, Mr. Licciardello's own version of the transaction does not meet his burden. At the time that Mr. Licciardello alleges that Mr. Panella used the funds for his own purpose, he had acquired them lawfully. That satisfies the first element of 523(a)(4). The second and third elements are also arguably satisfied because Mr. Panella did not immediately turn the money over to Roofing Outlet as the parties had agreed. Where the plaintiff fails to satisfy his burden is in demonstrating that Mr. Panella acted with fraudulent intent when he failed to immediately turn over the money. Although the parties disagree about whether Mr. Panella spent the Dial Roofing money before or after the parties entered into a repayment agreement, there is no dispute that such an agreement was made. Mr. Licciardello testified that when he asked Mr. Panella for the

---

[12] In re Hermes, 340 B.R. 369, 373 (Bankr. C.D. Ill. 2006)
[13] In re Belfry, 862 F.2d 661, 663 (8th Cir. 1988). *See also,* In re Ardolino, 298 B.R. 541, 545-46 (Bankr. W.D. Pa. 2003) (quoting 4 Collier on Bankruptcy, ¶ 523.10[2] at 523-76 (Bender 2003)
[14] In re Fuget, 339 B.R. 702, 707 (Bankr. S.D. Iowa 2006)
[15] In re Fowers, 360 B.R. 888, 899 (Bankr. N.D. Ind. 2007)

Case 11-01566-KCF    Doc 17    Filed 07/03/12    Entered 07/03/12 15:05:16    Desc Main
          Document      Page 8 of 10

money, Mr. Panella told him that he did not have it because he needed it for other other expenses. Mr. Panella did not attempt to conceal that he had used the funds, did not delay in admitting that he had taken them, and immediately proposed a repayment plan. Although Mr. Licciardello reluctantly agreed to the repayment plan, Mr. Panella did, by both accounts, bring in a few contracts and paid his share under the arrangements to Mr. Licciardello per their agreement. Mr. Panella admittedly stopped bringing new clients to Mr. Licciardello long before he repaid the entire amount due. The totality of the circumstances alleged by Mr. Licciardello, even before weighing them against the circumstances described by Mr. Panella, suggest that at the time he took possession of the funds, Mr. Panella intended to repay them. Judgment will be entered in favor of the Defendant on the embezzlement claim.

That leaves the claim for larceny. The elements of a claim based on larceny differ from the elements of embezzlement "only in that the larcenous debtor takes possession of the property unlawfully."[16] There is no suggestion in the record that Mr. Panella took possession of the funds unlawfully. Both parties testified that their understanding was that Mr. Panella would collect the funds from Dial Roofing. Judgment will be entered in favor of the Defendant on the basis of larceny as well.

Finally, Roofing Outlet seeks a denial of discharge based on 523(a)(6). Section 523(a)(6) prevents discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity."[17] Authorities have interpreted the operative language in § 523(a)(6)

---

[16] In re Sandoval, 341 B.R. 282, 294 (Bankr. C.D. Cal. 2006)
[17] 11 U.S.C. § 523(a)(6)

as embodying two distinct requirements: willfulness and malice.[18] Accordingly, a creditor has the burden to establish both willfulness and malice.[19]

To be "willful" the debtor's actions "must have been voluntary and deliberate."[20] Actions that are merely negligent or reckless will not suffice.[21] The United States Supreme Court has clarified that the word "willful" modifies the word "injury," therefore, nondischargeability under § 523(a)(6) "requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[22] The evidence presented at trial easily satisfies this element. Under either version of the facts, Mr. Panella acted willfully when he failed to immediately turn over the Dial Roofing payment in accordance with the parties' agreement.

The second element that must be established is that Mr. Panella acted with malice. Using the objective approach tacitly endorsed by the Third Circuit, an injury is willful and malicious "if the debtor caused harm through a deliberate action with an objective substantial certainty of injury."[23] To resolve the problem of the test for malice being virtually indistinguishable from the test for willfulness, this court has endorsed a definition of "willful" that requires the debtor's conduct to be wrongful.[24] And not just wrongful, there must also be "a heightened level of culpability".[25] For the reasons already expressed, the court does not find that Mr. Panella harbored a heightened level of culpability. While his actions might be described as wrongful

---

[18] Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.12[2] (16th ed. 2009); In re Fechnay, 425 B.R. 212 (Bankr. E.D. Pa. 2010).
[19] In re Ormsby, 591 F.3d 1199 (9th Cir. 2010)
[20] Viener v. Jacobs (In re Jacobs), 381 B.R. 128 (Bankr. E.D. Pa. 2008)
[21] *See,* In re Ingui, 2006 WL 637139 *2, n. 2 (Bankr. E.D. Pa. 2006) (citing Kawaauhau, 523 U.S. at 64). *See also*, In re Conte, 33 F.3d 303, 307 (3d Cir. 1994) ("for the injury to have been "willed" by the debtor, it must at least have been substantially certain to result from the debtor's act.").
[22] Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)
[23] In re Peterson, 332 B.R. 678, 682–83 (Bankr. D. Del. 2005)
[24] In re Pearman, 432 B.R. 495, 501 (Bankr. D.N.J. 2010)
[25] Id. (quoting In re Long, 774 F.2d 875 (8th Cir. 1985)

because he was changing the terms of his previous deal with Mr. Licciardello, because Mr. Panella was acting in the hope that he could repay Mr. Licciardello the court cannot find that his actions were willful and malicious.

## Conclusion

It was clear from the testimony that Mr. Licciardello feels sorely used by Mr. Panella, but the evidence presented at trial simply does not meet the rigorous standards under 523. The court did not resolve some of the factual disputes that arose at trial, because it did not need to make such findings. Mr. Licciardello's testimony, even when taken at face value, did not support the strict construction required.[26] Under either version of the facts, Roofing Outlet was unable to sustain its burden of proof.[27] The court will enter judgment in favor of Mr. Panella on all three causes of action. Debtor's counsel should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: July 3, 2012

---

[26] In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995) (exceptions to discharge are strictly construed in favor of the debtor)
[27] Grogan v. Garner, 498 U.S. 279 (1991) (in 523 actions the creditor has the burden to prove all elements by a preponderance of the evidence)